UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TARENCE BANKS,

                  Plaintiff,

v.                                           Case No. 16-cv-1349-pp

GARY BOUGHTON, *et al.*,

                  Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S
MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE
FILING FEE (DKT. NO. 4), SCREENING COMPLAINT AND DISMISSING
CASE**

---

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a complaint, dkt. no. 1, along with a motion for leave to proceed without prepayment of the filing fee, dkt. no. 4. The court grants the motion to proceed without prepaying the filing fee, screens the complaint, and dismisses the case.

I.     <u>Motion for Leave to Proceed without Prepayment of the Filing Fee</u>

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b).

On October 24, 2016, the court ordered the plaintiff to pay an initial partial filing fee of $17.59. Dkt. No. 6. The plaintiff paid that fee on November

1

22, 2016. Accordingly, the court will grant the plaintiff's motion. The court will require the plaintiff to pay the remainder of the filing fee over time as set forth at the end of this decision.

II. Review of the Plaintiff's Claim ("Screening" Order)

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint that offers "labels and conclusions," however, or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**A. The Plaintiff's Allegations**

The plaintiff has only one arm; his left arm was amputated after he suffered a shotgun wound.[1] During the events he describes in the complaint, he was incarcerated that the Wisconsin Secure Program Facility ("WSPF") in Boscobel, Wisconsin. Dkt. No. 1 at 1.

On June 15, 2015, the plaintiff wrote to the health services unit (HSU) at WSPF, because his arm was itching (he'd previously been housed at Dodge Correctional Institution; he'd reported the itching to the Dodge medical staff,

---

[1] The plaintiff doesn't explain this in his complaint in this case. But he had another case before this court, and explained his situation in that complaint. See Banks v. Patton, Case No. 14-cv-281 (E.D. Wis.), dkt. no. 1 at 6.

who'd been "finding a way to do something about it."). Id. at 2. In addition, the plaintiff needed help clipping his fingernails. Id. It appears that HSU referred him to an RN, who told him to talk to the Unit Manager social worker. They also advised him that they were considering the nail clipping concern, and would let him know. Id.

On June 22, 2015, the plaintiff wrote to the security director and asked that WSPF provide him with the same accommodation for his arm that he had received at Dodge. Id. at 2; Dkt. No. 1-1 at 2. For example, the plaintiff asked that his floor be "scrubbed" (to make it less slippery) and that he be given a chair to use in the shower. Id. Defendant Kartman responded that the requested items were reviewed and some were determined a "security concern," and that security was "exploring alternatives." Dkt. No. 1-1 at 2.

The plaintiff filed an inmate complaint about the denial of the requested items. Dkt. No. 1 at 2. On July 20, 2015, the inmate complaint examiner (ICE) recommended the complaint be dismissed. Dkt. No. 1-1 at 3. The ICE explained that, while the requested items had been denied, the plaintiff had been provided "a personal caretaker to accommodate his needs in place of the denied property items." Id.

On July 1, 2015, the plaintiff filed another inmate complaint, asserting that his cell was not handicap accessible. Dkt. No. 1 at 2; Dkt. No. 1-1 at 8. The plaintiff requested that he be given a toilet paper roll holder, a mounted shower scrubber, and that his floor be "roughed up" to prevent slipping. Dkt. No. 1-1 at 8. The ICE recommended the complaint be dismissed because "Unit

4

Supervisor Kool ha[d] contacted maintenance and the toilet paper roll holder and the cell floor will be completed as soon as possible." Id. In addition, the scrubber request was being considered by security. Id.

The plaintiff states that, on July 15, 2015, the Special Needs Committee denied his request for fitted sheets. Dkt. No. 1 at 2. In its notification of the denial, the committee instructed the plaintiff to refer his request "to the ADA." Dkt. No. 1-1 at 10.

On August 4, 2015, the plaintiff appealed the dismissal of his July 2015 inmate complaint. Dkt. No. 1-1 at 5. In reviewing the appeal, the corrections complaint examiner explained that WSPF had made changes to the plaintiff's inmate care plan since the July 2015 decision. Id. She explained that WSPF since had provided the plaintiff with a longer handled scrub bush at shower times (passed out daily and collected by staff after the plaintiff finishes showering), and had ordered a scrubber with suction cups to place on the plaintiff's sink so that he could wash his hand. Id. at 5, 11. She also stated that HSU scheduled the plaintiff for weekly assessments of his arm and his "need for assistance with bathing, lotion application, and nail clippings of finger nails on the right hand." Id. Finally, she noted that "the prosthetic arm need has progressed to the referral stage but will still require final approval from the DOC medical director." Id.

In September 2015, the plaintiff slipped on the wet floor after taking a shower, hurting his ankle and back. Dkt. No. 1 at 2. The plaintiff filed an inmate complaint about how slippery his shower floor was. Dkt. No. 1-1 at 14.

5

In affirming the complaint, the ICE noted that the plaintiff's cell floor had already been "roughed up" by maintenance; however, that solution appeared to be inadequate. Id. at 15. The ICE spoke to defendant Kool, who requested that maintenance explore other options. Id. Sometime later, WSPF added a non-slip floor mat to the plaintiff's shower area to lessen the likelihood of the plaintiff slipping during his showers. Id. The plaintiff complained that he did not believe the floor mat would be adequate and stated that he would prefer "sand strips" be placed over his entire cell floor. Id. WSPF denied the plaintiff's request for sand strips, finding that the roughed up floor and added shower mat were sufficient to address the risk of slipping. Id.

The plaintiff includes as an exhibit to his complaint "[a] true and correct copy of a memo of what Banks got over the past 2 years and what he didn't get while at WSPF." Dkt. No. 1 at 2-3. The memo states, in its entirety:

> ADA accommodations include:
>
> ADA equipped cell (hand rails and larger floor space).
> Elastic cornered bed sheets.
> Modified your floor to make it less slippery.
> Adjusted shower spray angle.
> Installed an ADA compliant shower bench so that you may sit while showering.
> Installed a toilet paper roll holder.
> Provided non-slip shower mat.
> Provided extra towels.
> Provided a shower brush available to you during shower times
> Provided soft suction cup brush for sink to wash hand
> Inmate caretaker is also available to help you with your daily needs.
> Food service provides food to accommodate your needs
> Given lower bunk accommodation
> HSU also has regular appointments with you to address personal care needs.

> Inmate was denied the device that he arrived with because of security concerns (It contained long metal screws). It cannot properly and safely be mounted to your cell wall.
>
> Per the policy: reasonable accommodation includes but is not limited to, adjustments, adaptations, or modifications to facilities or operation with a facility, or the use of modified or auxiliary aids that enable a qualified person with a disability equal access, participation, and benefits of programs and activities.

Dkt. No. 1-1 at 28.

The plaintiff argues that he should have been provided the same things at WSPF as he had received at Dodge. Dkt. No. 1 at 3. He alleges that "[u]pon information and belief," the staff at Dodge Correctional told him that he would receive the same "medical appliances" at WSPF that he had received at Dodge. Id. He states that he could not wash his own back, and WSPF staff told him to let another inmate wash his arm and back. Id. He states that he continued to complain, yet the defendants refused (and continue to refuse) to give him any help or assistance. Id.

### B. The Court's Analysis

The plaintiff alleges two causes of action in his complaint. First, he alleges that the defendants were deliberately indifferent in violation of the Eighth Amendment, and cites Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, he argues that the defendants violated the Equal Protection Clause of the Fourteenth Amendment, and cites to May v. Sheahan, 226 F.3d 876 (7th

Cir. 2000).

1. Eighth Amendment Claim

In his first cause of action, the plaintiff states, "plaintiff alleged Defendants were in violation of the 8th Amendment Deliberate Indifferent." Dkt. No. 1 at 3. He cites the Supreme Court's decision in Farmer in support of this claim.

In Farmer, the Supreme Court held that prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." Farmer, 511 U.S. at 833 (citations omitted). It appears to the court that the plaintiff means to state a claim that the conditions of his confinement at WSPF violated the Eighth Amendment's prohibition against cruel and unusual punishment.

Prison conditions can constitute cruel and unusual punishment, if the conditions are so severe that they deny an inmate "the minimal civilized measure of life's necessities." Hudson v. McMillian, 503 U.S. 1, 20 (1992); Gillis v. Litscher, 468 F.3d 488, 491 (7th Cir. 2006). To state a conditions-of-confinement claim, the plaintiff must allege that: (1) the prison conditions were serious enough to deny him basic human needs; and (2) the officers acted with a culpable state of mind, which at the minimum level, requires "deliberate indifference." McNeil v. Lane, 16 F.3d 123, 124 (7th Cir. 1993).

The plaintiff alleges that he could not wash his own arm and back and that his shower floor was slippery. Adequate facilities to wash are among the "minimal civilized measure of life's necessities" that prison officials must afford

8

prisoners. Jaros v. Illinois Dept. of Corrections, 684 F.3d 667, 670 (7th Cir. 2012). The Seventh Circuit has held, however, that to state a constitutional violation, a plaintiff must allege that prison officials denied him access to such facilities, not just that they made his use of, or access to, those facilities more difficult. Id. at 671. The plaintiff does not allege that the defendant denied him access to a shower, or denied him the opportunity to clean his arm and back. He alleges only that he had trouble using the shower, and couldn't wash his arm and back himself.

Even if the court were to construe the plaintiff's allegations broadly and find that his difficulties in using the shower and washing himself effectively denied him access to shower facilities, the plaintiff's allegations do not support a finding that the defendants were deliberately indifferent to his needs.

Federal Rule of Civil Procedure 10(c) states that, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." In evaluating the allegations in the plaintiff's complaint, the court also must consider the inmate complaints, ICE decisions, memos, and medical records that the plaintiff attached as exhibits. A plaintiff may plead himself out of court by including facts in his complaint that defeat his claim. Thompson v. Godinez, 561 Fed.Appx. 515, 518 (7th Cir. 2014). That is what the plaintiff has done here.

At the conclusion of his complaint, the plaintiff states that, despite his many complaints, the defendants "refused to give [him] any help and/or assistance with anything that has been alleged in this complaint . . . ." Dkt. No.

9

1 at 3. But the exhibits the plaintiff attached to the complaint show that, contrary to the plaintiff's assertion, the defendants have tried to accommodate the plaintiff's needs in a number of ways. They provided him with multiple scrub brushes, roughed up his shower floor, provided him with a bath mat, and assigned another inmate to help him with tasks he cannot perform on his own.

The plaintiff would have preferred "the same things he was provided at [Dodge]," dkt. no. 1 at 3, but the fact that the defendants did not address the plaintiff's needs the way he wanted them to does not mean that they were deliberately indifferent to those needs. The documents that the plaintiff himself provided show that the defendants have timely and thoroughly responded to his requests for assistance. The court will not allow the plaintiff to proceed on a conditions-of-confinement claim.

2. Equal Protection Claim

The plaintiff also fails to state an equal protection claim. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND XIV. To comply with that clause, governmental entities are generally required to treat all similarly-situated persons in a similar manner. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "Class of one" equal protection claims arise without regard to a protected-class status (such as race or gender) but require that the plaintiff allege that he "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for

the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

It appears that the plaintiff is alleging that the defendants' refusal to provide him with the same accommodations he received at Dodge Correctional violated his rights under the Equal Protection Clause. That claim fails for two reasons: First, the plaintiff has not alleged that there were any inmates at WSPF who were similarly situated to him. In order to state an equal protection claim, the plaintiff would have had to state facts demonstrating that there were such similarly-situated inmates at WSPF, and that the WSPF staff gave those similarly situated inmates accommodations they refused to give to him. He has not done so.

Second, even if the plaintiff *had* identified a group of similarly situated inmates, he would not be able to demonstrate that the defendants did not have a rational basis for refusing to give him the accommodations he requested. The exhibits the plaintiff attached to his complaint demonstrate that the defendants stated a rational basis for refusing to provide the plaintiff with the same accommodations he had at Dodge—namely, that the items he requested posed a security risk.

Because the plaintiff has not identified a similarly situated group of inmates, has not alleged that WSPF treated him differently than those inmates, and has not demonstrated that any such different treatment had no rational basis, he has not stated a Fourteenth Amendment equal protection claim.

III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 4).

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prisoner trust account the $332.41 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary or his designee shall identify the payments by the case name and number.

The court **ORDERS** that the plaintiff's complaint is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim, and will enter judgment accordingly. The court **DIRECTS** the Clerk of Court to document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g). The court will send copies of this order to the warden of the institution where the inmate is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 20th day of June, 2017.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**